RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NOS. A-0396-16T1
 A-0397-16T1

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

 Plaintiff-Respondent,

v.

H.I. and M.D.,

 Defendant-Appellants.
___________________________________

IN THE MATTER OF THE GUARDIANSHIP
OF M.D., a minor.
___________________________________________________

 Submitted September 12, 2017 - Decided October 12, 2017

 Before Judges Reisner, Hoffman, and Gilson.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Bergen County,
 Docket No. FG-02-0062-15.

 Joseph E. Krakora, Public Defender, attorney
 for appellant H.I. (Meghan K. Gulczynski,
 Designated Counsel, on the briefs).

 Joseph E. Krakora, Public Defender, attorney
 for appellant M.D. (Laura Orriols, Designated
 Counsel, on the briefs).

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Andrea M. Silkowitz,
 Assistant Attorney General, of counsel;
 Monique D’Errico, Deputy Attorney General, on
 the brief).

 Joseph E. Krakora, Public Defender, Law
 Guardian, attorney for minor M.D. (Joseph H.
 Ruiz, Designated Counsel, on the brief).

PER CURIAM

 The parents of a child appeal from a September 9, 2016

judgment terminating their parental rights to their daughter and

granting guardianship of the child to the Division of Child

Protection and Permanency (Division). Following a trial, Judge

William R. DeLorenzo, Jr. issued a thorough, seventy-four-page

written opinion finding that the Division had proven by clear and

convincing evidence each of the four prongs of the best interests

test set forth in N.J.S.A. 30:4C-15.1(a). Judge DeLorenzo also

found that it would be in the child's best interests to terminate

defendants' parental rights so the child could be adopted. We

affirm the judgment in these consolidated appeals.

 I.

 H.I. (Helen), the mother, and M.D. (Matt), the father, are

the parents of M.J.D. (Mary), born in 2013.1 The Division has

been involved with the family since the child was five months old.

Initially, the Division had concerns related to domestic violence

1
 To protect privacy interests and for ease of reading, we use
initials and fictitious names for the parents and child.

 2 A-0396-16T1
by Matt against Helen. In June 2013, Helen reported a history of

verbal and physical abuse by Matt, and Matt admitted to two prior

instances of domestic violence against Helen.

 Thereafter, the Division received reports of Helen abusing

drugs. In March 2014, the child was removed from the parents'

care. Helen admitted that she had been on a four-day cocaine

binge just before the removal. She also acknowledged using cocaine

and smoking marijuana while Mary was under her care. Helen also

admitted to using heroin. At the time the Division took custody

of Mary, Matt was incarcerated on assault and burglary charges.

 Mary has been in the care of the Division since March 2014,

and for the majority of her young life she has been with a resource

family who wants to adopt her.

 In 2014 and 2015, the Division provided both parents with

various services, including substance abuse treatment, parenting

classes, alternatives to domestic violence (ADV) training, and

psychological and psychiatric evaluations. While both Helen and

Matt attended certain treatment and received certain services,

neither parent made progress in treating their substance abuse,

their tendencies to engage in domestic violence, or their inability

to consistently and safely parent their child.

 Both parents attended substance abuse treatment, but failed

to successfully complete such treatment. Helen admitted to using

 3 A-0396-16T1
various drugs, including cocaine, heroin, and marijuana. She also

repeatedly tested positive for use of various illegal drugs.

Matt admitted to using marijuana on a regular basis, and tested

positive for use of marijuana on a number of occasions.

 The parents also continued to engage in domestic violence.

Matt has a lengthy and serious criminal history, and he admitted

to engaging in domestic violence against Helen, including an

incident where their child Mary was present. Helen reported a

number of instances where Matt physically assaulted her, including

a time when he punched her, and another time when he put a knife

to her throat.

 A psychological evaluation of Helen disclosed that she

suffered from bipolar disorder type II and depression. Matt was

also evaluated and he met the criteria for antisocial personality

disorder, which gave him poor insight into the risks of neglectful

parenting behavior.

 A four-day guardianship trial took place between March and

June 2016. The Division presented testimony from two of its

workers and Dr. Robert Miller, Ph.D., an expert. Both parents

attended and were represented at trial. Dr. James Reynolds

presented expert testimony on behalf of Helen.

 Based on the evidence at trial, Judge DeLorenzo found that

the Division had presented clear and convincing evidence of the

 4 A-0396-16T1
four prongs necessary to terminate both Helen's and Matt's parental

rights. N.J.S.A. 30:4C-15.1(a). In his written opinion, Judge

DeLorenzo made detailed findings concerning the parents' abuse and

neglect of Mary that placed her at risk of harm. He found that

Helen and Matt were unwilling or unable to eliminate the harm

facing Mary despite the Division providing them with a number of

services designed to help them achieve reunification. Judge

DeLorenzo also found that the Division had made reasonable efforts

to reunify Helen and Matt with Mary, and the Division had explored,

but properly ruled out, family members as potential caregivers of

Mary. Finally, relying on the expert testimony of Dr. Miller,

Judge DeLorenzo found that Mary would suffer harm if she were

removed from her resource parents, and it would not do more harm

than good to terminate both Helen's and Matt's parental rights

with the plan that Mary be adopted by her resource family.

 II.

 Helen and Matt each appeal from the September 9, 2016

judgment. Helen argues that (1) the Division failed to provide

her with the services she needed; (2) the Division failed to timely

and properly evaluate the paternal grandmother as a caretaker for

Mary; and (3) the court erred in concluding that terminating

Helen's parental rights would not do more harm than good. Matt

contends that (1) the proofs at trial did not establish prongs one

 5 A-0396-16T1
and two of the best interests standard; (2) the court erred in

finding that the Division had thoroughly explored alternative

placements as required by prong three; (3) the Division violated

his constitutional rights to due process and fundamental fairness;

and (4) the court erred in relying on the Division's expert.

 The scope of our review of an appeal from an order terminating

parental rights is limited. N.J. Div. of Youth & Family Servs.

v. R.G., 217 N.J. 527, 552 (2014). We uphold a trial judge's

fact-findings if they are "supported by adequate, substantial, and

credible evidence." Ibid. "We accord deference to fact findings

of the family court because it has the superior ability to gauge

the credibility of the witnesses who testify before it and because

it possesses special expertise in matters related to the family."

N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448

(2012). We will not overturn a family court's fact-findings unless

the findings "went so wide of the mark that the judge was clearly

mistaken." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J.

596, 605 (2007). We do not, however, give "special deference" to

the court's "interpretation of the law." D.W. v. R.W., 212 N.J.

232, 245 (2012).

 A parent has a constitutionally protected right "to enjoy a

relationship with his or her child." In re Guardianship of K.H.O.,

161 N.J. 337, 346 (1999). That right, however, "is not absolute"

 6 A-0396-16T1
and is limited "by the State's parens patriae responsibility to

protect children whose vulnerable lives or psychological well-

being may have been harmed or may be seriously endangered by a

neglectful or abusive parent." F.M., supra, 211 N.J. at 447. A

parent's interest must, at times, yield to the State's obligation

to protect children from harm. See N.J. Div. of Youth & Family

Servs. v. G.M., 198 N.J. 382, 397 (2009).

 When considering termination of parental rights, the court

focuses on the "best interests" of the children. K.H.O., supra,

161 N.J. at 347. Those interests are evaluated by application of

the four standards contained in N.J.S.A. 30:4C-15.1(a), which

require clear and convincing evidence that:

 (1) The child's safety, health, or development
 has been or will continue to be endangered by
 the parental relationship;

 (2) The parent is unwilling or unable to
 eliminate the harm facing the child or is
 unable or unwilling to provide a safe and
 stable home for the child and the delay of
 permanent placement will add to the harm. Such
 harm may include evidence that separating the
 child from his [or her] resource family
 parents would cause serious and enduring
 emotional or psychological harm to the child;

 (3) The division has made reasonable efforts
 to provide services to help the parent correct
 the circumstances which led to the child's
 placement outside the home and the court has
 considered alternatives to termination of
 parental rights; and

 7 A-0396-16T1
 (4) Termination of parental rights will not
 do more harm than good.

These four criteria "are neither discrete nor separate, but are

interrelated and overlap." N.J. Div. of Youth & Family Servs. v.

L.J.D., 428 N.J. Super. 451, 479 (App. Div. 2012). Together they

"provide a comprehensive standard that identifies a child's best

interests." K.H.O., supra, 161 N.J. at 348.

 Having reviewed all of the arguments presented by Helen and

Matt in light of the record and law, we affirm substantially for

the reasons set forth in Judge DeLorenzo's thorough and well-

reasoned written opinion. We add a few additional comments.

 Both Helen and Matt contend that the Division failed to timely

and properly evaluate family members as potential caregivers for

Mary. The record amply supports Judge DeLorenzo's finding that

the Division clearly and convincingly showed that it had explored

a number of family members as caregivers, but properly ruled out

those relatives. The Division considered Helen's sister, her

mother, and Matt's grandmother. Each of these relatives were

ruled out for well-founded reasons. In particular, Matt's

grandmother was ruled out because she had another grandson living

with her who had a substance abuse problem, and the grandmother

had a heavy work schedule. Moreover, the grandmother was

psychologically evaluated by Dr. Miller, who opined that she had

 8 A-0396-16T1
poor parental judgment and was unlikely to protect Mary. Judge

DeLorenzo credited Dr. Miller's testimony, and we have no reason

to disturb that reliance.

 Matt argues that he was not afforded the same opportunities

towards reunification with Mary that were given to Helen. Thus,

he contends that he was denied equal and fair treatment in

violation of his constitutional rights. Matt did not raise this

argument before the trial court. Consequently, this argument was

waived and need not be considered on appeal. State v. Robinson,

200 N.J. 1, 20 (2009).

 Even if considered, however, Matt's constitutional due

process and fairness argument lacks merit. The record establishes

that the Division's efforts to assist and provide services to Matt

were undercut by Matt's repeated incarcerations. At the time of

Mary's removal in 2014, and thereafter for several years, Matt was

in and out of jail based on his own independent actions.

Nevertheless, the Division offered a number of services to Matt,

which included substance abuse treatment, domestic violence

counseling, and parenting classes. The Division also provided

Matt with visitations with Mary, even when he was incarcerated.

Matt, however, did not comply with the services offered to him,

failed to maintain consistent contact with the Division, and did

not consistently visit Mary.

 9 A-0396-16T1
 Matt's and Helen's remaining arguments all challenge certain

factual findings of the four prongs necessary for terminating

their parental rights under N.J.S.A. 30:4C-15.1(a). As previously

summarized, Judge DeLorenzo found clear and convincing evidence

of all four prongs. All of those factual findings are supported

by substantial credible evidence. See F.M., supra, 211 N.J. at

448-49. Judge DeLorenzo also correctly analyzed the relevant law

and concluded that the Division had met the legal requirements for

a judgment of guardianship. See N.J.S.A. 30:4C-15.1(a); K.H.O.,

supra, 161 N.J. at 347-48. We discern no basis to disturb Judge

DeLorenzo's factual findings, and we agree with his legal

conclusions.

 Affirmed.

 10 A-0396-16T1